UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY JONES,<br><br>Plaintiff,<br><br>v.<br><br>STUART SHERMAN, et al.,<br><br>Defendants. | Case No. 1:21-cv-01093-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART AND THAT DEFENDANTS' REQUEST FOR JUDICIAL NOTICE BE DENIED<br><br>(ECF No. 23)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

## I.    INTRODUCTION

Tracy Jones ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This case proceeds on Plaintiff's Eighth Amendment conditions of confinement claim against defendants Sherman and Lopez. (ECF Nos. 1 & 9).[1]  This case proceeds based on allegations that defendants Sherman and Lopez were aware of the serious risk of COVID-19, yet failed to enforce their own policies or follow the Center for Disease Control's guidelines, which led to Plaintiff getting infected with COVID-19.  (Id.).

On November 30, 2021, Defendants filed a motion to dismiss, along with a request for judicial notice.  (ECF No. 23).  On December 20, 2021, Plaintiff filed his opposition to the

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

motion.  (ECF No. 26).  On December 24, 2021, Defendants filed their reply.  (ECF No. 27).

For the reasons that follow, the Court finds that Defendants are not entitled to qualified immunity under either prong of the analysis, that Plaintiff does not need to allege facts at this stage of the proceeding in order to be entitled to punitive damages, and that Plaintiff's request for declaratory relief should be dismissed (without prejudice to Plaintiff filing a motion for leave to amend if a request for declaratory relief becomes necessary).  Accordingly, the Court will recommend that Defendants' motion to dismiss be granted in part.  The Court will also recommend that Defendants' request for judicial notice be denied.

## II.    CLAIMS AT ISSUE

### a.    Summary of Plaintiff's Complaint

Plaintiff alleges as follows in his complaint:

Plaintiff is currently housed at the Substance Abuse Treatment Facility ("SATF").  Defendant Stuart Sherman is the Warden of SATF.  He was responsible for Plaintiff's wellbeing, safety, and health.  Defendant Lopez is a Correctional Lieutenant on Facility F.  He was responsible for Plaintiff's wellbeing, safety, and health on Facility F.

COVID-19 is a novel, highly infections virus.  It has been declared a global pandemic and resulted in lockdowns of entire countries around the globe to stop the spread of the virus.

Correctional officers on Facility F would not, and failed to, wear their face masks.  They knew or should have known that this put Plaintiff at a substantial risk of getting COVID-19.

Plaintiff was infected with COVID-19.  Plaintiff has suffered and will continue to suffer symptoms like shortness of breath and headaches, which will likely cause irreparable harm and permanent harm to him.

Defendants turned Facility F, which was a non-infected facility, into a quarantine.  This infected all inmates in that facility, including Plaintiff.

Defendants transferred inmates around the facility, dramatically increasing the risk to inmates due to close proximity of both inmates and guards.

Defendants allowed porters that tested positive to work with non-infected porters.

Plaintiff was assigned to an eight-man cell, and he shared a restroom with seven other inmates.  This precluded effective social distancing measures and put Plaintiff at risk of contracting COVID-19.

During daily count, Plaintiff had to stand within six feet of another inmate.

Defendants know that many of their officers "have refused to be vaccinated, leaving vast numbers of inmates to be denied the choice to protect themselves from COVID-19."

Social distancing was impossible during sick call, medical appointments, and picking up daily meals.

Defendants failed to enforce "the six feet social distancing."

Defendants were deliberately indifferent to Plaintiff's health and safety by failing to enforce their policy of not housing inmates who did not have COVID-19 with inmates that tested positive for COVID-19 and by failing to enforce their policy that staff members had to wear masks.

Defendants failed to provide sanitation materials to disinfect common areas, such as telephones, the Kiosk, and dayroom tables.

Defendants allowed infected inmates that worked in the kitchen in Facility F to distribute daily meals to Plaintiff and other inmates.

Defendants failed to follow clear guidance from the Center for Disease Control.

Defendants knew and should have known that COVID-19 posed a serious risk to Plaintiff.

b.  <u>Screening Order</u>

On August 19, 2021, the Court screened Plaintiff's complaint and found "that Plaintiff's Eighth Amendment conditions of confinement claim against defendants Sherman and Lopez should proceed past screening."  (ECF No. 9, p. 7).

In the screening order, the Court provided applicable law.  This included that prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety.  <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1107 (9th Cir. 1986), <u>abrogated in part on other grounds by</u> <u>Sandin v. Connor</u>, 515 U.S. 472 (1995).  The Court also explained

3

that, to state a claim, Plaintiff must show that Defendants acted with deliberate indifference to a threat to his health or safety.  (ECF No. 9, p. 6).

Applying the applicable law, the Court allowed Plaintiff's claim to proceed based on Plaintiff's allegations that "Defendants were aware of the serious risk COVID-19 posed to inmates, yet failed to enforce their own policies or follow the Center for Disease Control's guidelines.  This led to Plaintiff getting infected with COVID-19, and he is still experiencing symptoms."  (Id.).  As the Court "found that Plaintiff's only claim should proceed past screening" (id.), the Court authorized service of process on Defendants (ECF No. 10).

### III.   MOTION TO DISMISS

#### a.   Defendants' Motion

On November 30, 2021, Defendants filed a motion to dismiss, along with a request for judicial notice.  (ECF No. 23).  "This motion is based on the ground that qualified immunity bars Plaintiff's claim against Defendants for deliberate indifference in violation of Plaintiff's Eighth Amendment right.  Qualified immunity bars Plaintiff's claim because the allegations do not show any particular Defendant violated the Eighth Amendment, as Plaintiff does not allege facts linking any specific act or omission by any specific Defendant to his alleged injury.  And qualified immunity also bars Plaintiff's claim because it was not clearly established that the alleged misconduct—even if attributed to Defendants—would violate the Eighth Amendment."  (ECF No. 23, pgs. 1-2).

"Additionally, Plaintiff fails to state a claim for punitive damages because Plaintiff does not allege that each Defendant acted with the requisite 'evil motive or intent' or with 'reckless or callous indifference to the federally protected rights of others,' as required to justify punitive damages.  And Plaintiff's request for declaratory relief also fails because there is no ongoing controversy, and the request is redundant and unnecessary."  (Id. at 2).

As to their request for judicial notice, Defendants ask the Court to take judicial notice of the fact that the California Department of Corrections and Rehabilitation's health care system is in federal receivership, and that the federal receiver and the Court in Plata v. Newsom, 445 F. Supp. 3d 557, have overseen the California Department of Corrections and Rehabilitation's

response to COVID-19 in state prisons.  (ECF No. 23-1, pgs. 9-10).  Defendants also ask the Court to take judicial notice of the measures that the California Department of Corrections and Rehabilitation took in response to COVID-19.  (Id. at 10-11).

        b.  Plaintiff's Opposition

Plaintiff filed his opposition on December 20, 2021.  (ECF No. 26).  Plaintiff alleges that Defendants' actions and inactions caused him to contract COVID-19 on November 30, 2020.  (Id. at 2).

Moreover, Defendants violated clearly established law because it is clearly established that individuals in government custody have a constitutional right to be protected against a heighted exposure to "serious easily" communicable diseases.  (Id.).  This clearly established right extends to protection from COVID-19.  (Id.).  Moreover, "Plaintiff's claim is not barred under the first prong of the qualified-immunity because he plead facts showing that Defendants violated his Eighth Amendment rights, when he submitted letter and grievance to Defendants."  (Id. at 4) (errors in original).

Plaintiff states that he did allege that no measures were taken when he filed grievances and sent letters to Defendants informing them that officers would not and failed to wear their masks.  (Id. at 2).  Additionally, "Defendants turned a non-infected facility F into a quarantine, which infected all inmates, including Plaintiff."  (Id.).  "Defendants had no measures to protect Plaintiff from COVID-19."  (Id. at 3).  "The actions and inactions of the Defendants took place between May 11, 2020 and November 30, 2020."  (Id.).  "Defendants did not respond reasonably to the risk of the spread of COVID-19 and therefore was [sic] deliberately indifferent to the Plaintiff's Eighth Amendment rights…."  (Id.).

Plaintiff also argues that the Court already screened his complaint based on the same Rule 12(b)(6) legal standard and found that the complaint stated a cognizable claim.  (Id. at 2).  "[T]his screening order may not be ignored or disregarded."  (Id.).  "Defendants failed to identify the basis for their motion, be it error, an intervening change in the law, or some other recognized exception to the law of the case doctrine."  (Id.).

Plaintiff also argues that "Defendants acted with callous indifferences to the federally

1    protected rights of others, which justify [sic] punitive damages."  (Id.).

2            However, "Plaintiff agrees with Defendants that his request for declaratory relief at this

3    stage is unnecessary."  (Id.).

4            Plaintiff does not oppose Defendants' request for judicial notice, and he asks the Court

5    to take judicial notice of Maney v. Brown, 2020 WL 7364977 (D. Or. Dec. 15, 2020).  (ECF

6    No. 26, p. 3).[2]

7    **IV.    DISCUSSION**

8            a.  Legal Standards

9                    i.  *Motions to Dismiss*

10           In considering a motion to dismiss, the Court must accept all allegations of material fact

11   in the complaint as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Hosp. Bldg. Co. v.

12   Rex Hosp. Trustees, 425 U.S. 738, 740 (1976).  The Court must also construe the alleged facts

13   in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

14   abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni,

15   31 F.3d 813, 816 (9th Cir.1994) (per curiam).  All ambiguities or doubts must also be resolved

16   in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  In addition, *pro*

17   *se* pleadings "must be held to less stringent standards than formal pleadings drafted by

18   lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints

19   should continue to be liberally construed after Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

20           A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the

21   complaint.  See Iqbal, 556 U.S. at 679.  "Federal Rule of Civil Procedure 8(a)(2) requires only

22   'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order

23   to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"

24   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting

25   Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "The issue is not whether a plaintiff will ultimately

26

27          [2] Plaintiff's request for judicial notice is not clear.  Plaintiff does not identify any facts that he wants the
     Court to take judicial notice of, nor does he explain why the Court should take judicial notice of a case.  To the
28   extent Plaintiff is asking the Court to take judicial notice of Maney v. Brown for the legal analysis contained
     therein, such a request is unnecessary.  Plaintiff does not need Court approval to cite a case for this purpose.

1  prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer,

2  416 U.S. at 236 (1974).

3             ii.   *Conditions of Confinement*

4        "It is undisputed that the treatment a prisoner receives in prison and the conditions

5  under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment."

6  Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832

7  (1994).  Conditions of confinement may, consistent with the Constitution, be restrictive and

8  harsh.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d

9  1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v.

10  Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*).  Prison officials must, however,

11  provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."

12  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other

13  grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726,

14  731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen,

15  642 F.2d 1129, 1132-33 (9th Cir. 1981).

16        Two requirements must be met to show an Eighth Amendment violation.  Farmer, 511

17  U.S. at 834.  "First, the deprivation alleged must be, objectively, sufficiently serious." Id.

18  (citation and internal quotation marks omitted).  Second, "a prison official must have a

19  sufficiently culpable state of mind," which for conditions of confinement claims "is one of

20  deliberate indifference." Id. (citations and internal quotation marks omitted).  Prison officials

21  act with deliberate indifference when they know of and disregard an excessive risk to inmate

22  health or safety.  Id. at 837.  The circumstances, nature, and duration of the deprivations are

23  critical in determining whether the conditions complained of are grave enough to form the basis

24  of a viable Eighth Amendment claim.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006).

25  Mere negligence on the part of a prison official is not sufficient to establish liability, but rather,

26  the official's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost v. Agnos, 152

27  F.3d 1124, 1128 (9th Cir. 1998).

28  \\\

iii. *Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Al–Kidd, 563 U.S. at 741) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

b. Analysis

Defendants argue that they are entitled to qualified immunity under prong one because the facts shown by Plaintiff do not make out a violation of a constitutional right and under prong two because the right was not clearly established at the time of Defendants' alleged misconduct. Defendants also argue that Plaintiff has not sufficiently alleged a claim for punitive damages and that Plaintiff's request for declaratory relief fails because there is no ongoing controversy and the request is redundant.[3]

For the reasons that follow, the Court finds that Defendants' request for judicial notice

---

[3] Plaintiff argues that the Court should deny Plaintiff's motion because the Court already screened his complaint based on the same Rule 12(b)(6) legal standard and found that the complaint stated a cognizable claim. (ECF No. 26, p. 2). However, as Defendants did not have an opportunity to respond to the screening order, the Court's screening order does not foreclose a Rule 12(b)(6) motion. Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007) ("[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring."). Adopting a contrary position "would deprive Defendants of basic procedural rights afforded to ordinary defendants not sued by plaintiff-prisoners proceeding IFP, a result which does not square with the statute's goal of minimizing clearly meritless prisoner litigation. In addition, basic fairness weighs in favor of allowing Defendants to have their motion decided on the merits." Id. at 1120. Accordingly, the Court will address Defendants' arguments on the merits.

should be denied, that Defendants are not entitled to qualified immunity under either prong, that Plaintiff does not need to allege facts at this stage of the proceeding in order to be entitled to punitive damages, and that Plaintiff's request for declaratory relief should be dismissed (without prejudice to Plaintiff filing a motion for leave to amend if a request for declaratory relief becomes necessary).

### i.   Request for Judicial Notice

Defendants ask the Court to take judicial notice of:

1) relevant portions of the Certified Transcript of Video Recording of Senate Public Safety Committee Senate Hearing on COVID-19 in California State Prisons on July 1, 2020, published on the California State Senate Website Media Archive at https://www.senate.ca.gov/media-archive (last visited Nov. 29, 2021);

2) Governor Newsom's Executive Order of March 4, 2020, declaring a State of Emergency due to COVID-19, a copy of which is published on the Office of Governor Gavin Newsom website at https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/ (last visited Nov. 29, 2021);

3) Centers for Disease Control and Prevention, *COVID-19 Science Update*, published at https://www.cdc.gov/library/covid19/scienceupdates.html?Sort=Date%3A%3Ad esc (Nov. 12, 2021; copy last printed Nov. 17, 2021; website last visited Nov. 29, 2021); and,

4) U.C. Davis Health, COVID-19 *Information continues to evolve: what's new and what has changed*, published at https://health.ucdavis.edu/health-news/newsroom/covid-19- information-continues-to-evolve-whats-new-and-what-has-changed/2020/08 (Aug. 26, 2020; copy last printed Nov. 17, 2021; website last visited Nov. 29, 2021).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the pleadings.  Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998).  However, "[t]he Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

The Court will recommend that Defendants' request for judicial notice be denied.  This

is not a motion for summary judgment, and the Court generally may not consider materials outside the pleadings when ruling on a motion to dismiss.  Defendants' request for judicial notice appears to be an attempt by Defendants to set forth facts regarding the seriousness of COVID-19 and the California Department of Correction and Rehabilitation's response.  While those facts will be relevant to Plaintiff's claims going forward, they are not relevant to deciding whether Plaintiff has stated a claim or whether Plaintiff's complaint should be dismissed on the pleadings.

Moreover, judicial notice is not appropriate here.  Defendants are asking the Court to take judicial notice of these documents, not to show that the documents exist, but for the truth of the facts asserted in those documents.  And, Defendants have not sufficiently shown that the accuracy of the relevant facts asserted in the documents are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot be questioned.  Accordingly, the Court cannot take judicial notice of the documents for the truth of the facts asserted therein.  See, e.g., Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) ("But accuracy is only part of the inquiry under Rule 201(b).  A court must also consider—and identify—which fact or facts it is noticing from such a transcript.  Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.") (citation and internal quotation marks omitted); Clark v. Citizens of Human., LLC, 97 F. Supp. 3d 1199, 1202 (S.D. Cal. 2015) ("While a court may take judicial notice of the existence of matters of public record, such as a prior order or decision, it should not take notice of the truth of the facts cited therein.") (citation and internal quotation marks omitted).

Additionally, the relevant facts referred to by Defendants are not generally known within this Court's territorial jurisdiction, and the documents are not referenced in Plaintiff's complaint.

Accordingly, the Court will recommend that Defendants' request for judicial notice be denied.

\\\

10

*ii.  Cases Involving Allegations Related to COVID-19*

While the Ninth Circuit has not yet addressed an Eighth Amendment claim by a prisoner related to COVID-19, several district courts have addressed such allegations.  While not binding on this Court, the Court looks to such decisions, including those cited by Defendants, for guidance.

After reviewing the case law, the Court finds that there is a general consensus that a prisoner states a cognizable Eighth Amendment conditions of confinement claim if the prisoner can sufficiently alleges that a defendant knew of the risks of COVID-19 and had authority to mitigate the risks, yet did nothing to mitigate those risks.

To begin, many courts have found that COVID-19 poses a substantial risk of serious harm, satisfying the objective prong:

> It is clear that COVID-19 poses a substantial risk of serious harm. See *Plata v. Newsom*, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.); *see also Williams v. Dirkse*, No. 1:21-cv-00047-BAM (PC), 2021 U.S. Dist. LEXIS 103673, at *22–23 (E.D. Cal. June 2, 2021) ("The transmissibility of the COVID-19 virus in conjunction with [the prisoner plaintiff's] living conditions are sufficient to satisfy that 'conditions put the plaintiff at substantial risk of suffering serious harm.' "); accord *Sanford v. Eaton*, No. 1:20-CV-00792-BAM(PC), 2021 WL 3021447, at *7 (E.D. Cal. July 16, 2021); *Benitez v. Sierra Conservation, Center, et al.*, No. 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living conditions, which he alleges were overcrowded and poorly ventilated, are sufficient to satisfy the objective prong).

Johnston v. CDCR Health Care, 2021 WL 5921461, at *5 (E.D. Cal. Dec. 15, 2021) (alterations in original), underline report and recommendation adopted, 2022 WL 183432 (E.D. Cal. Jan. 20, 2022).

Defendants cite three cases for the proposition that "California district courts have found that similar general allegations—in the COVID-19 context—do not state a cognizable Eighth Amendment claim."  (ECF No. 23-1, p. 15).  First, Defendants cite Allen v. Sacramento County, a case in which the plaintiff did not allege any facts related to his claims.  2021 WL 4991171, at *3 (E.D. Cal. Oct. 27, 2021).  Instead, he "only state[d] that CDC recommendations were not followed and that he contracted COVID-19 as a result of negligence

by the Sacramento County Sheriff's Office."  Id.  Second, Defendants cite McKissick v. Gastelo, 2021 WL 2895679, at *5 (C.D. Cal. July 9, 2021), for the proposition that, "to state a cognizable claim, 'Plaintiff must provide more than generalized allegations that Defendants have not done enough to enforce six-feet social and living distancing, or provided sufficient cleaning supplies, in order to control the spread of COVID-19.'"  (ECF No. 23-1, p. 16).  Third, Defendants cite Cedillos v. Youngblood, 2021 WL 2534534, at *3-8 (E.D. Cal. June 21, 2021), report and recommendation adopted, 2021 WL 3032688 (E.D. Cal. July 19, 2021), a case in which "the section 1983 claim based on allegations of failure to clean and disinfect housing, cells, and showers in prison during the COVID-19 pandemic [was dismissed], where plaintiff failed to allege a causal link between each defendant and the failures."  (ECF No. 23-1, p. 16).

Defendants also cite three cases in support of their argument that "recent district court decisions have concluded that prison staffs' failure to comply with COVID-19 guidelines, as Plaintiff has alleged here, without more, does not satisfy th[e] subjective requirement."  (ECF No. 23-1, p. 18).  Defendants cite Blackwell v. Covello, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021), for the proposition that "'to state a cognizable Eighth Amendment claim against the warden plaintiff must provide more than generalized allegations that the warden has not done enough to control the spread.'"  (ECF No. 23-1, p. 18).  Defendants cite Foster v. Shirley, 2021 WL 2457655, at *3 (E.D. Cal. June 16, 2021), report and recommendation adopted, 2021 WL 4061650 (E.D. Cal. Sept. 7, 2021), for the proposition that "[t]he key inquiry is not whether prison officials perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they responded reasonably to the risk."  (ECF No. 23-1, p. 18) (internal quotation marks omitted).  Finally, Defendants cite Lopez v. Allison, 538 F. Supp. 3d 946 (N.D. Cal. 2021), because it found that "allegations that prison staff failed to provide personal protective equipment and COVID-19 tests did not satisfy the subjective prong of deliberate indifference."  (ECF No. 23-1, p. 18).

These cases support the conclusion that generalized allegations are insufficient to state a claim related to COVID-19, that there must be a casual link between the alleged actions and the

1   constitutional violation, that if a defendant acted reasonably in response to the risk of COVID-

2   19 a plaintiff's claim will fail, and that the failure to follow certain COVID-19 guidelines,

3   without more, is insufficient to satisfy the subjective prong of the deliberate indifference

4   standard.[4]  However, Plaintiff provided more than generalized factual allegations in his

5   complaint, Plaintiff linked Defendants' actions (or inactions) to the alleged deprivation,

6   Plaintiff alleged that Defendants did not respond reasonably (they allegedly took no action at

7   all), Plaintiff alleged that he caught COVID-19 and is still experiencing symptoms, and

8   Plaintiff alleged more than that Defendants just failed to provide personal protective equipment

9   and COVID-19 tests.

10      Defendants also argue that "developing law suggests that a heightened risk to COVID-

11  19 in the correctional setting is not inherently unconstitutional.  In *Plata v. Newsom*—a long-

12  running class action that relates to California's provision of medical services to prisoners—the

13  U.S. District Court for the Northern District of California held that prisoner plaintiffs had not

14  shown that the state's response to the COVID-19 pandemic had been so deficient as to violate

---

[4] The Court notes that in <u>Lopez</u>, while the court found Plaintiff failed to sufficiently allege the required mental state based on a failure to distribute COVID-19 tests and Personal Protective Equipment, the court found a claim based on failure to follow other COVID-19 protocols:

> Delgadillo Lopez's allegations regarding the transfer of inmates from CIM to SQSP are a different matter. He alleges that the transfer was ordered by the federal receiver, that the federal receiver and executives at CDCR pressured CIM to effect the transfer quickly, and that in order to effect this transfer quickly, CDCR executives approved CIM's skirting of health guidelines. The skirting of health guidelines included ordering the transfer of inmates whose Covid-19 tests were out-of-dateor [sic] who had not been tested for Covid-19 at all; this resulted in infected inmates being moved from CIM to SQSP.  Delgadillo Lopez alleges that CIM officials and CDCR executives pursued this course of action despite repeated warnings that the transfer, and lack of testing surrounding the transfer, were "problematic."

> During the transfer itself, Delgadillo Lopez alleges that CDCR executives ignored social distancing protocols and overloaded buses, likely furthering the spread of Covid-19. Moreover, after the CIM inmates arrived at SQSP, SQSP officials chose to neither re-test nor isolate the CIM inmates, despite warnings from local health officials that such measures were necessary. Delgadillo Lopez alleges that he began to suffer from symptoms of Covid-19 shortly after the transfer of infected inmates from CIM to SQSP, and that he continues to experience adverse effects. Liberally construed, this is sufficient to allege an Eighth Amendment claim against the defendants.

<u>Lopez</u>, 538 F. Supp. 3d at 949-950 (citations omitted).

the Eighth Amendment because state officials had relocated inmates within and between facilities, had committed to the amount of physical distancing that the federal Receiver had directed, and had taken steps to reduce prison population, among other things, even though those steps had not fully prevented the spread of COVID-19.  *See* 445 F. Supp. 3d 557, 559, 567, 571 (N.D. Cal. 2020)."  (ECF No. 23-1, pgs. 20-21).  Again, the holding of that court rests on its factual finding that the State had (at some point) implemented certain safety measures that adequately addressed the risk of COVID-19.  However, Plaintiff's complaint does not contain such allegations, and Defendants provide no authority that the <u>Plata</u> court's factual findings are binding here, especially at the motion to dismiss stage.

Defendants also cite to <u>Hines v. Youseff</u>, 914 F.3d 1218 (9th Cir. 2019).  "In an analogous case, *Hines v. Youseff*, inmates who contracted Valley Fever brought suit against prison officials alleging that housing inmates who were at a higher risk of developing complications from Valley Fever, and did catch Valley Fever, at particular prisons violated those inmates' Eighth Amendment rights.  914 F.3d 1218, 1223, 1226-27 (9th Cir. 2019).  The Ninth Circuit found the officials were qualifiedly immune because not 'every reasonable official would [have understood] that exposing them to a heightened risk of valley fever violated the Eighth Amendment.'  *Id.* at 1229-30 (citing *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).  In so holding, the *Hines* court looked to existing precedent and concluded that 'the specific right that the inmates claim in these cases—the right to be free from heightened exposure to Valley Fever spores—was not clearly established at the time.'  *Id.* at 1229-30."  (ECF No. 23-1, p. 20).

However, as to this issue, the Court finds persuasive Magistrate Judge Stacie F. Beckerman's legal analysis in <u>Maney v. Brown</u>, 2020 WL 7364977 (D. Or. Dec. 15, 2020):

> Defendants argue that due to the novelty of the COVID-19 pandemic, no prior case has clearly established the appropriate constitutional response to the pandemic. (Defs.' Mot. Partial Summ. J. at 10-11.) Plaintiffs respond that precedent need not announce a constitutional right with respect to a specific virus. (Pls.' Resp. at 19.) Rather, Plaintiffs argue that existing law provided Defendants with fair warning of their responsibility to protect individuals in their custody from heightened exposure to a highly communicable disease. (Pls'

Resp. at 20-21.) For the reasons discussed herein, the Court agrees with Plaintiffs.

…

Existing precedent clearly establishes the right of an individual in custody to protection from heightened exposure to a serious communicable disease. *See, e.g.*, *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (finding prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease" under the Eighth Amendment); *see also Hutto v. Finney*, 437 U.S. 678, 682-83, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978) (affirming a finding of an Eighth Amendment violation where a facility housed individuals in crowded cells with others suffering from infectious diseases, such as Hepatitis and venereal disease, and the individuals' "mattresses were removed and jumbled together each morning, then returned to the cells at random in the evening"); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under the Eighth Amendment and 42 U.S.C. § 1983 for an alleged policy of not screening inmates for infectious diseases—HIV, Hepatitis C, and Heliobacter pylori—and for housing contagious and healthy individuals together during a known "epidemic of hepatitis C"); *Trevizo v. Webster*, No. CV 17-5868-MWF (KS), 2018 U.S. Dist. LEXIS 227476, 2018 WL 5917858, at *4 (C.D. Cal. Sept. 6, 2018) ("It is well accepted that such 'substantial risks of harm' include 'exposure of inmates to a serious, communicable disease[,]'" including MRSA) (citing *Helling*, 509 U.S. at 33); *see also Loftin v. Dalessandri*, 3 F. App'x 658, 663 (10th Cir. 2001) (recognizing an Eighth Amendment claim for knowingly housing the defendant in a cell with individuals who had tested positive for tuberculosis); cf. *Farmer v. Brennan*, 511 U.S. 825, 843, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) ("The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health[.]'" (citing *Helling*, 509 U.S. at 35)). "For purposes of qualified immunity, that legal duty need not be litigated and then established disease by disease or injury by injury." *Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017).

Thus, the law is clearly established that individuals in government custody have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases, and the Court finds that this clearly established right extends to protection from COVID-19. It is undisputed that COVID-19 is easily communicable. (See Defs.' Mot. Partial Summ. J. at 3; SAC ¶ 45.) In addition, based on the known mortality rate, hospitalizations, and medical consequences, there can be no dispute that COVID-19 exposes AICs to a sufficiently substantial risk of serious harm. (See Defs.' Reply at 7; Stern Decl. ¶¶ 9-10.) The law does not support a finding of qualified immunity for government officials who fail to protect individuals in their custody from a new serious communicable disease, as opposed to a serious communicable disease of which they were previously aware.  To hold otherwise as a matter of law would provide qualified immunity to Defendants even if they had done nothing in response to the COVID-19 pandemic.

… Defendants also argue that *Hines v. Youseff* forecloses a finding of a clearly established right. 914 F.3d 1218 (9th Cir.), *cert. denied sub nom. Smith v. Schwarzenegger*, 140 S. Ct. 159, 205 L. Ed. 2d 46 (2019). The Court disagrees.

…

The Ninth Circuit's decision in *Hines v. Youseff* does not require a different result. In *Hines*, the Ninth Circuit found that individuals in custody had no clearly established right to be free from heightened exposure to Valley Fever spores. 914 F.3d at 1228. Notably, the court found that "[s]ince the prisoners are confined together, it is especially important that Valley Fever is not contagious." *Id.* at 1226. The court noted that "no societal consensus has emerged that the risk [of contracting Valley Fever] is intolerably grave," such that a reasonable officer would not necessarily know that housing individuals together in a region known for Valley Fever violated the Constitution. *Id.* at 1232. In contrast here, COVID-19 is highly contagious, is not bound to a geographic area, and a societal consensus has emerged regarding its danger. There is no dispute that this virus presents a sufficiently substantial risk of harm to AICs, and it should have come as no surprise to Defendants that they have a duty to protect AICs from exposure to COVID-19.

<u>Maney</u>, 2020 WL 7364977, at *4-6 (alterations in original) (footnote omitted).

Based on the foregoing, the Court finds that a prisoner states a cognizable Eighth Amendment conditions of confinement claim if the prisoner can sufficiently allege that a defendant knew of the risks of COVID-19 and had authority to mitigate the risks, yet did nothing to mitigate those risks. The Court also finds that the law is clearly established that individuals in government custody have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases, and that this this clearly established right extends to protection from COVID-19.

### iii.   Prong One of Qualified Immunity

The Court now turns to whether Defendants are entitled to qualified immunity based on prong one the analysis. Defendants argue that Plaintiff's vague and conclusory allegations are insufficient to state a deliberate indifference claim against Defendants. (ECF No. 23-1, p. 14).

For purposes of a motion to dismiss, the Court must construe the alleged facts in the light most favorable to Plaintiff, resolve all ambiguities and doubts in Plaintiff's favor, and hold Plaintiff's *pro se* pleading to a less stringent standard than formal pleadings. And in doing so,

the Court finds that the facts alleged by Plaintiff make out a violation of a constitutional right under the above-cited case law.

Here, Plaintiff sues the Warden and the Correctional Lieutenant on Facility F. Plaintiff alleges that both of these individuals were responsible for Plaintiff's wellbeing, safety, and health. Despite this, Plaintiff alleges that Defendants took no precautions to protect Plaintiff from COVID-19. They did not enforce six-feet social distancing, they did not enforce their policy that staff had to wear masks, they did not provide sanitation materials to disinfect common areas, and they turned Facility F, which was a non-infected facility, into a quarantine, which infected inmates and put inmates in the facility at risk of catching COVID-19, including Plaintiff. Plaintiff has also alleged that he was eventually infected with COVID-19. These are specific factual allegations. Plaintiff has also alleged that the Warden and Correctional Lieutenant on Facility F were the individuals responsible for protecting him from COVID-19, and liberally construing Plaintiff's complaint and drawing all reasonable inferences in his favor, Plaintiff has sufficiently alleged that these supervisors were responsible for enforcing the policies that were created to protect Plaintiff from COVID-19, but failed to do so (and thus were personally involved in the deprivation of Plaintiff's constitutional rights).

As to Plaintiff's failure to allege when the actions or inactions occurred, Defendants argue that "[s]uch allegations regarding time are particularly important here, given that what was known about COVID has changed and evolved over time—and has still not settled. Thus, it follows that what might be considered proper measures to address COVID-19 have likewise evolved." (ECF No. 23-1, p. 14) (citations and internal quotation marks omitted).[5] Plaintiff also alleged that the policies to address the spread of COVID-19 were already in place, but that Defendants failed to follow those policies. Plaintiff is not alleging that the policies were insufficient or that more effective policies should have been put in place. Thus, the evolution of COVID-19 policies and procedures is not relevant for purposes of this motion to dismiss.

---

[5] Defendants also argue that Plaintiff failed to allege where the actions or inactions occurred. However, liberally construing Plaintiff's complaint and drawing all reasonable inferences in Plaintiff's favor, Plaintiff sufficiently alleged that the failures occurred while Plaintiff was housed at Facility F at California Substance Abuse Treatment Facility.

As to the subjective prong, Plaintiff alleged that COVID-19 is a novel, highly infections virus, and has been declared a global pandemic.  Plaintiff also alleged that policies were put in place to protect inmates from this global pandemic, but that Defendants did not enforce these policies.  While these allegations do not directly show that Defendants had subjective knowledge, circumstantial evidence can be used to show subjective knowledge.  Farmer, 511 U.S. at 842-43 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, cf. Hall 118 (cautioning against 'confusing a mental state with the proof of its existence'), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  Cf. LaFave & Scott § 3.7, p. 335 ('[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of').  For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.'  Brief for Respondents 22.") (alterations in original) (footnote omitted).

And, liberally construing Plaintiff's complaint and drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently alleged that Defendants were aware of the danger of COVID-19, yet took no actions to protect Plaintiff (and in fact turned a non-infected facility into a quarantine, which infected all inmates in that facility, including Plaintiff).[6]

Based on the foregoing, the Court finds that Defendants' request to dismiss Plaintiff's

---

[6] In his opposition, Plaintiff attempts to show objective knowledge by alleging that he filed grievances and sent letters to Defendants informing them that officers would not and failed to wear their masks.  (ECF No. 26, p. 2).  However, these allegations are not included in Plaintiff's complaint.  Accordingly, the Court will not consider them for purposes of determining whether Plaintiff's claim should be dismissed.

claim based on the first prong of the qualified immunity analysis should be denied.

*iv.   Prong Two of Qualified Immunity*

The Court next turns to whether Defendants are entitled to qualified immunity under the second prong of the analysis.  Defendants argue that they are entitled to qualified immunity because Plaintiff cannot establish that Defendants violated a clearly established right. Defendants argue that "neither binding precedent nor a robust consensus of persuasive authority would have put every reasonable official on notice that an unquantifiable increase in the risk of exposure to COVID-19 based on vague failings in the prison's COVID-19 response would violate the Eighth Amendment."  (ECF No. 23-1, pgs. 19-20).

While the underlying factual allegations are not identical, as discussed above, the Court finds persuasive, and adopts, Magistrate Judge Stacie F. Beckerman's legal analysis in Maney v. Brown, 2020 WL 7364977.

Additionally, the Court emphasizes that in 1993, the Supreme Court decided a case involving exposure to environmental tobacco smoke (ETS), finding that the plaintiff stated "a cause of action under the Eighth Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health."  Helling v. McKinney, 509 U.S. 25, 35 (1993).  The Supreme Court also stated:

> We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year. In *Hutto v. Finney*, 437 U.S. 678, 682, 98 S.Ct. 2565, 2569, 57 L.Ed.2d 522 (1978), we noted that inmates in punitive isolation were crowded into cells and that some of them had infectious maladies such as hepatitis and venereal disease. This was one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery. Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.

Helling, 509 U.S. at 33.

Based on the foregoing, the Court finds that, when the actions (or inactions) of Defendants occurred in this case, the law was clearly established that individuals in government custody have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases, and that this this clearly established right extends to protection from COVID-19.

Plaintiff has sufficiently alleged that Defendants did not protect Plaintiff from COVID-19 in any way, and thus Plaintiff has sufficiently alleged that Defendants violated a clearly established right.  Therefore, Defendants' request to dismiss Plaintiff's claim based on the second prong of the qualified immunity analysis should be denied.

### v.  Punitive Damages

As to Defendants' request to dismiss Plaintiff's claim for punitive damages, the Court will recommend that this request be denied.

Rule 54(c) provides that a final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).  "Citing this rule, the Ninth Circuit has found that a plaintiff need not include in his complaint a 'specific prayer for emotional distress or punitive damages' in order to give the opposing party proper notice of the claim against him."  Preayer v. Ryan, 2017 WL 2351601, at *6 (D. Ariz. May 31, 2017) (quoting Cancellier v. Federated Dep't Stores, 672 F.2d 1312, 1319 (9th Cir. 1982)).  If a plaintiff need not even include a prayer for punitive damages in his complaint to receive an award of punitive damages, this Court agrees that it "makes little sense" to require detailed factual allegations to support a demand for punitive damages.  Elias v. Navasartian, 2017 WL 1013122, at *5 (citing Soltys v. Costello, 520 F.3d 737, 742 (7th Cir. 2008)), report and recommendation adopted, 2017 WL 977793 (E.D. Cal. Mar. 13, 2017).  Accordingly, the Court finds that Defendants' request to dismiss Plaintiff's claim for punitive damages should be denied.

### vi.  Declaratory Relief

Defendants argue that Plaintiff's request for declaratory relief should be dismissed because there is no ongoing controversy, and that the request is redundant and unnecessary.

(ECF No. 23, p. 1-2).  "Plaintiff agrees with Defendants that his request for declaratory relief at this stage is unnecessary."  (ECF No. 26, p. 2).

Because Plaintiff agrees that this request is unnecessary at this stage and does not oppose Defendants' request to dismiss his claim for declaratory relief, the Court will recommend that Plaintiff's request for declaratory relief be dismissed, without prejudice to Plaintiff filing a motion for leave to amend if a request for declaratory relief becomes necessary.

## V.     RECOMMENDATIONS

Based on the foregoing, IT IS RECOMMENDED that:

1.  Defendants' motion to dismiss (ECF No. 23) be GRANTED IN PART;

2.  Plaintiff's request for declaratory relief be dismissed, without prejudice to Plaintiff filing a motion for leave to amend if a request for declaratory relief becomes necessary;

3.  Defendants' motion to dismiss be denied as to the request to dismiss Plaintiff's claim because they are entitled to qualified immunity;

4.  Defendants' motion to dismiss be denied as to the request to dismiss Plaintiff's request for punitive damages; and

5.  Defendants' request for judicial notice be denied.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.

\\\

\\\

\\\

\\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 11, 2022**          /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE